STATE of Wisconsin,
Plaintiff-Respondent,

v.

Jose M. JAIMES,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP1511–CR. Submitted on briefs February 13, 2006.*
*—Decided April 11, 2006.*

2006 WI App 93

(Also reported in 715 N.W.2d 669.)

† Petition to review denied 6-14-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph L. Sommers* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Jose Jaimes appeals a judgment convicting him after a jury trial of two counts of delivering cocaine, party to a crime. He argues that under the double jeopardy clause he should not have been retried on these charges when a State's witness's

testimony created a mistrial. Jaimes argues in the alternative that his convictions should be reversed because the State's closing rebuttal argument improperly commented on his constitutional right to not testify at trial and misstated the law and facts relating to the absence of two codefendants. We reject these arguments and affirm the judgment.

## MISTRIAL

¶ 2. Jaimes's first argument is based on what occurred at his first trial. On the day before that trial, the State filed a motion to introduce other acts evidence showing that Jaimes had previously participated in uncharged cocaine deals with the same undercover police officer, Antonio Matos, who testified at the trial. Because the motion was untimely, the trial court denied the motion. Matos was the State's first witness at trial, and very early into his testimony he testified in response to the prosecutor's questioning:

Q. And what else took place at that point in terms of the drugs and the weight and what the defendant was doing?

A. Oh, once I—I retrieved those items from the younger individual [codefendant Octavio Velazquez], I turned to—to defendant's attention and I asked him if it [the cocaine] was all there, if the—*if the weight was correct because I complained that the last time, he had shorted me.* (Emphasis added.)

¶ 3. Jaimes's counsel immediately objected and outside the presence of the jury moved for a mistrial on the ground that Matos had improperly introduced other acts evidence. In response to the motion, the prosecutor said that he had instructed Matos not to mention

661

uncharged drug sales and suggested the court could correct the error by issuing a cautionary instruction to the jury. Counsel for Jaimes opposed the prosecutor's suggestion, arguing that Matos's reference to an uncharged drug deal created the impression that Jaimes is a drug dealer and a cautionary instruction could not erase the prejudice to Jaimes. The trial court agreed with Jaimes's counsel, granted the mistrial, and rescheduled the case for trial with a caution to the State that it would not allow any other wrongful acts evidence.

¶ 4. Before retrial, Jaimes moved for dismissal of the two deliveries of cocaine charges on double jeopardy grounds. The trial court denied the motion, finding that Matos's testimony was not an intentional violation of its order, but rather a comment that flowed unfortunately from the factual setting. It also concluded:

> The court does not find that the prosecutor's actions, and I don't think the question actually would—should have prompted the answer that was given. So I don't find the action was intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; and, two, the prosecutor's action was not designed either to create another chance to convict—since we're at the very beginning of this trial—to provoke a mistrial in order to get another kick at the cat because the first trial was going badly, or to prejudice the defendant's rights to successfully complete the criminal trial, criminal confrontation at the first trial, or to harass him with any subsequent prosecution.

¶ 5. Before the jury selection of the second trial, Jaimes renewed his motion to dismiss the charges on the basis of double jeopardy, and the court again denied the motion concluding the prosecutor had not over-reached at the first trial as that trial had barely begun and it was the State's first witness. The second trial

proceeded, and the jury found him guilty of both delivering cocaine charges.

¶ 6. Although the State argues Jaimes may have failed to preserve this issue for appeal by failing to pursue interlocutory review before retrial, we decline to consider whether this was required, and rather, address the issue.

¶ 7. The double jeopardy clause of both the federal and state Constitutions protects a defendant's right to have his or her trial completed by a particular tribunal and protects a defendant from repeated attempts by the State to convict the defendant for an alleged offense. *State v. Hill*, 2000 WI App 259, ¶ 10, 240 Wis. 2d 1, 622 N.W.2d 34. However, when a defendant successfully requests a mistrial, the general rule is that the double jeopardy clause does not bar a retrial because the defendant is exercising control over the mistrial decision or in effect choosing to be tried by another tribunal. *Id.*, ¶ 11.

¶ 8. An exception to this rule is that retrial is barred when a defendant moves for and obtains a mistrial due to prosecutorial overreaching where two conjunctive elements must be shown:

(1) The prosecutor's action must be intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; and

(2) the prosecutor's action was designed either to create another chance to convict,

that is, to provoke a mistrial in order to get another

"kick at the cat" because the first trial is going badly, or to prejudice the defendant's rights to successfully com-

plete the criminal confrontation at the first trial, *i.e.,* to harass him by successive prosecutions.

*State v. Quinn,* 169 Wis. 2d 620, 624, 486 N.W.2d 542 (Ct. App. 1992) (citation omitted).

¶ 9. Jaimes first takes issue with the trial court's finding that the individual prosecutor did not intentionally attempt to prejudice him or that the questioning was not an attempt to create another chance to convict.

¶ 10. Determining the existence or absence of the prosecutor's intent involves a factual finding, which will not be reversed on appeal unless it is clearly erroneous. *Hill,* 240 Wis. 2d 1, ¶ 12. Here there is sufficient evidence to support the trial court's findings. The prosecutor was opposed to granting the mistrial and suggested instead that a cautionary instruction be given to cure any prejudice from officer Matos's answer. The trial court could reasonably infer that, had a mistrial been the goal of the prosecutor, he would not have opposed the motion. Additionally, as the trial court observed, this was the State's first witness and the answer occurred very early on direct examination. It was thus unlikely that the State could perceive that the trial was going poorly. Also, the prosecutor immediately asserted to the trial court that he expressly told Matos not to mention uncharged drug sales in light of the trial court's ruling excluding other acts evidence. Finally, the prosecutor's question did not remotely invite Matos to mention any prior drug deal. Instead, it was merely a straightforward question about the occurrences relating to one of the charges that inadvertently elicited a prohibited response.

¶ 11., Next, Jaimes argues that the prosecutor's responsibility to avoid provoking a mistrial must extend

to the law enforcement officers who testify at trial, in this case, Matos. Although Jaimes cites no direct authority for this proposition, he makes the analogy to the prosecutor's duty to ensure that all relevant information possessed by law enforcement agencies involved in a prosecution is disclosed to a defendant in accordance with statutory discovery, including information that the prosecutor may not have personally known. *See State v. DeLao*, 2002 WI 49, ¶¶ 21–24, 252 Wis. 2d 289, 643 N.W.2d 480. In effect, Jaimes argues that the officer's testimony must be imputed to the prosecutor, and when an officer testifies about explicitly excluded evidence, it is binding on the prosecutor so as to attach double jeopardy.

■

¶ 12. In response to this argument, the State acknowledges that no Wisconsin court has addressed this argument. It urges us to follow other jurisdictions' holding that a police officer's testimony creating a basis for the mistrial—in the absence of evidence of collusion by the prosecutor's office intended to provoke the defendant to move for a mistrial—does not constitute prosecutorial overreaching to bar a retrial. We agree with the analysis in other jurisdictions and conclude that an officer's wrongful testimony will not be imputed to the prosecutor in the absence of evidence of collusion by the prosecutor's office intended to provoke the defendant to move for a mistrial and therefore does not constitute prosecutorial overreaching so as to bar a retrial.

¶ 13. In *People v. Walker*, 720 N.E.2d 297, 301 (Ill. App. Ct. 1999),[1] the Illinois Court of Appeals addressed the same issue and concluded:

---

[1] *See also United States v. Green*, 636 F.2d 925, 928–29 (4th Cir. 1980); *State v. Maddox*, 365 S.E.2d 516, 517–18 (Ga. Ct.

Allowing a police officer's inappropriate trial testimony, without collusion by the prosecutor's office, to bind the State on double jeopardy principles would infringe on the State's Attorney's independent power to decide whether or not to prosecute a defendant for an offense. We believe that imputing a police officer's comments to the State and holding that double jeopardy attaches, in the absence of prosecutorial misconduct, when a police officer testifies about explicitly excluded evidence would take away the unique authority to prosecute offenders that is granted to the State's Attorney.

¶ 14. The State admits that showing collusion between a prosecutor and a police witness may be a difficult proposition for a defendant to sustain, but contends this is no less true with respect to showing that a prosecutor intended to provoke the defendant to move for a mistrial. We agree. The test for overreaching is meant to be an onerous one as many trials admittedly will have some evidentiary error, and the remedies of striking the testimony, admonishing the prosecutor or witness or issuing a cautionary instruction typically are viewed as sufficient to remove prejudice to a criminal defendant. *See Oregon v. Kennedy*, 456 U.S. 667, 675 (1982).

¶ 15. Here, the record is barren of any evidence that the prosecutor colluded with the officer to provoke the defendant into moving for a mistrial. Thus, we reject Jaimes's argument that the prosecutor over-reached either individually or in collusion with the officer's testimony with the intent to provoke Jaimes into moving for a mistrial in order to prejudice him or

App. 1988); *Commonwealth v. Deloney*, 20 S.W.3d 471, 474–75 (Ky. 2000); *West v. State*, 451 A.2d 1228, 1233–36 (Md. Ct. Spec. App. 1982).

create another chance to convict. Accordingly, we agree with the trial court that the principles of double jeopardy did not bar retrial of Jaimes.

## PROSECUTOR'S REBUTTAL ARGUMENT

¶ 16. Jaimes's second argument is based on his retrial for the cocaine sales to undercover officer Matos. Matos was "wired" with a transmitter for the drug buys, while detective Carlos Negron and lieutenant Mark Mathy conducted surveillance from a nearby vehicle. Negron videotaped several portions of the drug buy, and the tape was subsequently played for the jury.

¶ 17. For the first drug buy, Matos testified that on October 25, 2002, he met with Jaimes, accompanied by Velazquez, in front of a garage attached to the Tex Mex tavern, which Jose Albiter owns. Matos purchased cocaine from Jaimes and then rendezvoused with the surveillance officers. For the second buy, Matos called Jaimes regarding the purchase of additional cocaine. Jaimes informed Matos that he no longer sold drugs, and Jaimes directed him to Albiter. On December 4, 2002, Matos met Albiter at the Tex Mex and purchased cocaine.

¶ 18. At trial, defense counsel argued to the jury it should not believe Matos's testimony regarding the drug buys because Matos was a "professional liar" in his role as an undercover officer. Defense counsel also questioned the lack of testimony at trial from Jaimes's collaborators, Velazquez and Albiter. In rebuttal, the prosecutor replied to the defense counsel's contentions about the lack of testimony from Velazquez and Albiter, stating:

> So when [defense counsel] raises a question, well, we've got all these MIA's – well you know, you heard the instruction as party to a crime. Anyone else who was

involved in setting up any of these deals or participating in any way, either by aiding and abetting or conspiring, they're a potential defendant. So is Jose Albiter going to come to court and say, oh, yeah, I delivered.

¶ 19. Defense counsel objected to this statement arguing it "assumes facts not in evidence." The trial court overruled the objection and the prosecutor continued:

So Jose Albiter isn't going to walk into court and say, oh, by the way, I delivered a hundred grams of cocaine, you know, and waive his Fifth Amendment right and do all that at the snap of a finger because he'd be implicating himself in a crime. The same thing is true of Octavio Velazquez. My God, they have the same rights that he does.

And if he was interested in presenting testimony exonerating him, he's got subpoena power the same way I do to ask people to come here – Mr. Velazquez and Mr. Albiter . . . if these guys are so critical, but, no. You know, focus on the evidence.

¶ 20. After the jury began deliberations, defense counsel objected to the previous passage, stating: "I fear the District Attorney came quite close commenting on my client's right to remain silent in an improper way." The trial court instructed counsel to present his objection in writing as a post-verdict motion. Jaimes challenged the prosecutor's rebuttal argument in a post-verdict motion on the two grounds that he now pursues in this appeal. The trial court denied Jaimes's motion, concluding that the prosecutor's rebuttal argument was a proper response to defense counsel's argument, and it was not an improper statement on Jaimes's right to silence. The court pointed to its own statement instructing the jury that Jaimes had "the absolute

constitutional right not to testify" and the jurors "cannot use that in any way against Jaimes."

¶ 21. On appeal, Jaimes argues that his two convictions for delivery of cocaine should be vacated and the underlying charges dismissed with prejudice because of prosecutorial misconduct during closing argument. More specifically, Jaimes contends the prosecutor improperly commented in rebuttal argument on Jaimes's constitutional right to silence manifested in his right not to testify at trial. To avoid issues with a defendant's right to silence, a prosecutor may not suggest to the jury that a defendant's choice not to testify indicates guilt, assuming the prosecutor's statement is not a fair response to a defense argument. The Supreme Court explains:

> It is one thing to hold, as we did in *Griffin* [*v. California*, 380 U.S. 609, 615 (1965)], that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

*United States v. Robinson*, 485 U.S. 25, 34 (1988). Thus, for a prosecutor's comment to constitute an improper reference to the defendant's failure to testify, three factors must be present: (1) the comment must constitute a reference to the defendant's failure to testify; (2) the comment must propose that the failure to testify

demonstrates guilt; and (3) the comment must not be a fair response to a defense argument. *See id.*

¶ 22. Here, the prosecutor's comment was not improper because it does not satisfy the second and third requirement from *Robinson*. To begin, the prosecutor's rebuttal argument satisfied the first requirement because the comment referenced Jaimes's failure to testify. Again, the prosecutor stated:

> So [alleged collaborator] Jose Albiter isn't going to walk into court . . . and waive his Fifth Amendment right, and . . . implicat[e] himself in a crime. The same thing is true of [alleged collaborator] Octavio Velazquez. My God, they have the same rights that he does.

Whether a prosecutor's remarks reference a defendant's failure to testify is based on " 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *State v. Lindvig*, 205 Wis. 2d 100, 107, 555 N.W.2d 197 (Ct. App. 1996) (quoting *State v. Johnson*, 121 Wis. 2d 237, 246, 358 N.W.2d 824 (Ct. App. 1984)). Because it is likely the prosecutor's comment was manifestly intended or the jury would take it to be a comment on the Jaimes's failure to testify, the first prong has been satisfied.

¶ 23. The prosecutor's comment, however, does not satisfy the second *Robinson* prong because the prosecutor did not state or intimate that Jaimes's failure to testify indicated guilt. The prosecutor simply identified the right against self-incrimination as a right available to anyone accused of a crime. Along those lines, the trial court stated in its final instructions: "A defendant in a criminal case has the absolute constitu-

tional right not to testify." Further, the Supreme Court has noted that courts should not assign the most damning conclusion to a prosecutor's remarks stating:

> [A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

*Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). Thus, the second prong is not satisfied.

¶ 24. Furthermore, the prosecutor's comment does not satisfy the third *Robinson* requirement that the comment must not be a fair response to a defense argument. Rather, the prosecutor's comment was a fair response to the defense counsel's argument that failure on the part of alleged collaborators Velazquez and Albiter to testify should be held against the State. Specifically, defense counsel prompted jurors to speculate that Velazquez and Albiter did not testify because they would not corroborate the accusations of the undercover officer. In response, the prosecutor fairly suggested that the pair had the right not to testify in accordance with their Fifth Amendment right against self-incrimination. It has been held that " 'when a prosecutor's comments, fairly viewed, are susceptible to two plausible meanings, one of which is unexceptionable and one of which is forbidden, context frequently determines meaning.' " *United States v. Newton*, 327 F.3d 17, 27 (1st Cir. 2003) (citation omitted).

¶ 25. Jaimes also asserts that the prosecutor misstated both the law and fact regarding the absence from trial of codefendants Octavio Velazquez and Jose Luis Albiter. First, Jaimes argues that the prosecutor made a

legally false claim when stating that the State "did not have the means to compel Albiter, Velazquez or anyone else to testify." Jaimes suggests prosecutors can "grant use immunity and com[pel] witnesses to testify accordingly." Jaimes's assertion is both factually incorrect and does not fully explain the legal standards surrounding "use immunity."

¶ 26. First, the prosecutor did not state that he lacked the ability to compel Arbiter or Velazquez to testify. The prosecutor simply stated that Jaimes has "got subpoena power the same way I do to ask people to come here." Thus, the prosecutor was pointing to the ability of both the State and Jaimes to subpoena witnesses. *See Elam v. State*, 50 Wis. 2d 383, 389, 184 N.W.2d 176 (1971). It has been held previously that "it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, 'particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness.' " *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (citation omitted).

¶ 27. Although it is true that the State, unlike a defendant, can *offer* "use immunity" to a prospective witness for trial testimony under WIS. STAT. § 927.08(1)(a), the prosecutor cannot *grant* use immunity. *See Elam*, 50 Wis. 2d at 393. Instead, it is up to the trial court, in its discretion, to grant immunity to a prospective witness on the motion of the prosecutor. *See State v. Jones*, 217 Wis. 2d 57, 63, 576 N.W.2d 580 (Ct. App. 1998). Also, at the risk of contempt of court, a witness may still elect not to testify. WIS. STAT. § 972.08(2).

¶ 28. Further, Jaimes alleges that the prosecutor stated "that Mr. Albiter was not testifying because Mr.

Albiter intended to take the Fifth [Amendment]" and that this statement was factually incorrect. However, the prosecutor was simply noting that if called to testify, Albiter could invoke his Fifth Amendment privilege to avoid implicating himself. Simply put, the prosecutor was correctly suggesting that most witnesses do not volunteer to provide self-incriminating testimony without protection that the evidence will not be used against the witness.

*By the Court.*—Judgment affirmed.