BRASH, J.
¶1 Mickey L. Miller appeals a nonfinal order of the trial court denying his motion to dismiss the armed robbery and false imprisonment charges against him. Miller was previously granted a mistrial, without prejudice, after the existence of an additional photo array was discovered during his trial. That additional photo array contained the picture of an individual that police believed could have been the perpetrator, but the victim eliminated him as a suspect.
¶2 The existence of that additional photo array was unknown to either party prior to trial; however, its discovery directly impacted Miller's primary theory of defense, which revolved around the identification of the other suspect. Furthermore, the State was unable to immediately obtain information regarding the additional photo array. As a result, the trial court granted the defense's request for a mistrial.
¶3 After an investigation relating to the additional photo array, the State sought to reschedule the trial. Miller, however, filed a motion to dismiss on the grounds that a new trial would subject him to double jeopardy. The State argues that the law relating to double jeopardy does not prevent the commencement of a new trial after a mistrial is requested by the defendant unless the mistrial was granted because of prosecutorial overreaching. The State contends that the elements required to prove prosecutorial overreaching are not present in this case. We agree and affirm.
BACKGROUND
¶4 The charges against Miller stem from an incident reported to police on February 23, 2013, by the victim, R.H. R.H. stated that she had just finished shopping at a Walgreens on Martin Luther King Drive in Milwaukee when she was approached by an African-American male wearing a "green Army type jacket" just outside the door. The suspect told R.H. that he "wanted the money out of her purse." R.H. gave the suspect her wallet, which also contained her debit card.
¶5 The suspect, who had a black handgun, then forced R.H. to drive her car, a blue Kia, to an alley behind an apartment building, where he demanded that she give him anything else of value in her car or purse. The suspect then got into the driver's seat of the car and drove to a gas station, where he forced R.H. to withdraw money from an ATM using her debit card. R.H. withdrew $200, which she told the suspect was the limit that she could withdraw that day. They returned to R.H.'s car, with the suspect again getting into the driver's seat. He told R.H. they were going to use her other credit cards to withdraw more money. He also threatened to harm R.H. and her family if she did not cooperate.
¶6 When the suspect stopped at an intersection, R.H. jumped out of the passenger door. She fell to the ground and dropped her purse, but immediately got up and ran to the closest police station to report the crime. While R.H. was giving her statement to police, a witness walked into the police station with R.H.'s purse. The witness explained that she had seen R.H. "roll" out of a car, drop her purse, and run to the police station. The witness then observed the car make a left turn and continue traveling down Locust Street. Additionally, around this same time, officers conducting an unrelated traffic stop in the area observed a blue Kia driving at a high rate of speed, and recovered it-abandoned-a short time later.
¶7 During the investigation of this incident, officers observed an individual wearing a jacket that was identical to the one worn by the suspect. That individual was stopped and identified as J.M. J.M. stated that he had gotten the jacket from the home of his sister, T.M. Police then discovered that T.M. had another brother-Miller-and that Miller matched the description of the suspect provided by R.H. Furthermore, police reviewed the surveillance video from the gas station where the suspect had forced R.H. to withdraw cash from the ATM, and Miller matched the photo taken from that surveillance camera.
¶8 Miller was arrested. A photo array was conducted, and R.H. positively identified Miller as her assailant. Miller was charged with armed robbery and false imprisonment.
¶9 The matter proceeded to trial in August 2014.[1] During the opening statement by Miller's trial counsel, he told the jury that when police had initially reviewed the surveillance video from the gas station, they thought the suspect was J.M., an individual known to them through previous contacts. Counsel stated that police had shown R.H. only one photo array-which included Miller-but had never shown R.H. a photo array that included J.M.
¶10 R.H. testified at the trial. During the direct examination by the State, R.H. stated that she had positively identified Miller from a photo array. During cross-examination, counsel asked R.H. if the police had ever told her that they thought the surveillance photo of the suspect looked like someone else. After an objection by the State and a subsequent sidebar, it came to light that the State had recently discovered that the police had shown R.H. another photo array-which included J.M.-prior to showing her the photo array that included Miller. Neither party had received any information on this additional photo array prior to trial.
¶11 By the next day, the additional photo array had been located, but there was no report accompanying it. Additionally, the police officer who was believed to have conducted that photo array was out of town. Counsel for Miller, noting that identification of the suspect was a key component of their defense, requested a mistrial in order to further investigate the additional photo array. The trial court recognized that the defendant had a right to information regarding the additional photo array, and that there was no way to get any further information in a timely manner so that the trial could continue. Thus, the court granted the defense's motion for a mistrial. The court further stated that this issue was not the result of any misconduct, and therefore jeopardy had not attached. Accordingly, the mistrial was granted without prejudice.
¶12 There were numerous procedural issues that affected the scheduling of a new trial. Miller then filed the motion to dismiss that is the subject of this appeal in April 2016. In that motion, Miller requested an evidentiary hearing because no one who was present when the mistrial was granted-with the exception of Miller-was still involved in the case at that point.[2] The trial court granted Miller's request for a hearing.
¶13 An evidentiary hearing was held over several dates: December 9, 2016; March 3, 2017; and April 14, 2017. Several police officers involved with administering the additional photo array testified regarding who had shown it to R.H. and why a report of the results had not been generated. Additionally, the court reviewed in camera records relating to an Internal Affairs investigation into the matter.
¶14 The assistant district attorneys (ADAs) who prosecuted the first trial also testified at the evidentiary hearing. They explained that they were not aware of the additional photo array until they met with R.H. to prepare her testimony just prior to her taking the stand on the second day of the trial; when they informed R.H. that they would be showing her the photo array, R.H. asked "Which one?" It was at that point that the ADAs realized that there must have been more than one photo array shown to R.H., although they did not disclose this information to the trial court and the defense until after they had conducted the direct examination of R.H.
¶15 Ultimately, the trial court found that while the situation regarding the missing photo array "[c]ould ... have been handled better" by both the police department and the State, there was "nothing that was prejudicial or sinister about any of it." The trial court further noted that there was "no reason for the police department or for the State to hide this evidence" because the information actually "made the State's case stronger" in that R.H. had eliminated another potential suspect in that additional photo array. Therefore, the court held that the case could be retried, and denied Miller's motion to dismiss.
¶16 Miller petitioned this court for leave to appeal that nonfinal order, which was granted. This appeal follows.
DISCUSSION
¶17 Miller argues that the "egregious" misconduct of the State in this matter bars a retrial on double jeopardy grounds. The Fifth Amendment to the United States Constitution, as well as article I, section 8 of the Wisconsin Constitution, prohibits "subjecting any person 'for the same offense to be twice put in jeopardy.' " State v. Hill , 2000 WI App 259, ¶10, 240 Wis. 2d 1, 622 N.W.2d 34. However, "the general rule is that the double jeopardy clause does not bar a retrial" when a defendant requests a mistrial. Id. , ¶11.
¶18 Still, there is an exception to that rule which may be applied when the defendant's request for a mistrial is granted due to "prosecutorial overreaching." Id. There are two elements required to prove prosecutorial overreach:
(1) [t]he prosecutor's action must be intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; and (2) the prosecutor's action was designed either to create another chance to convict, that is, to provoke a mistrial in order to get another "kick at the cat" because the first trial is going badly, or to prejudice the defendant's rights to successfully complete the criminal confrontation at the first trial, i.e. , to harass him by successive prosecutions.
State v. Jaimes , 2006 WI App 93, ¶8, 292 Wis. 2d 656, 715 N.W.2d 669 (citation omitted). This is a factual determination by the trial court that will not be overturned unless it is clearly erroneous. Hill , 240 Wis. 2d 1, ¶12.
¶19 The record relating to the ADAs' conduct in this case does not indicate that either element was present. The ADAs testified at the evidentiary hearing that they knew nothing about the additional photo array until they were preparing R.H. for her testimony. While they did not immediately advise Miller's counsel of their discovery, there is no evidence to support a finding that the ADAs intentionally kept the information from counsel in an attempt to prejudice the defense. See Jaimes , 292 Wis. 2d 656, ¶8. In fact, this discovery actually strengthened the State's case because R.H. had advised the ADAs that she had not identified J.M., the other suspect, in that additional photo array. Indeed, this was recognized by the trial court in its finding that there was no reason for the State to keep this evidence from the defense, and thus the State's failure to immediately disclose the information was not an attempt to prejudice the defense.
¶20 Furthermore, there is no evidence that the State was seeking to provoke a mistrial or prejudice Miller's right to a fair trial for purposes of harassment or in an attempt to gain another chance to convict him. See id. The State already had a strong case against Miller based on the evidence, such as R.H.'s positive identification of Miller, the surveillance photo from the gas station that matched Miller, the corroborating witness who saw R.H. "roll" out of the vehicle, and the jacket worn by Miller's half-brother that matched the description given by R.H. As the trial court found, there was no reason for the State to engage in conduct that would alter the course of the trial. Therefore, the second element of prosecutorial overreaching is not met. See id.
¶21 We also note that the record indicates that at the time Miller's trial counsel requested the mistrial, he specifically stated that he did not believe the ADAs "in any way, shape or form tried to hide or keep evidence from the defense[.]" In fact, it is undisputed that the information about the additional photo array was not known by the State at the time trial counsel made his opening statement referencing J.M., the initial suspect. Moreover, counsel indicated that Miller understood when the mistrial was granted that the case was not being dismissed outright, but merely could not go forward at that time, and that prosecution of the charges would continue after complete information on the additional photo array was obtained.
¶22 In sum, the record supports the trial court's factual findings that there was no prosecutorial overreaching that caused the mistrial; thus, those findings were not clearly erroneous. See Hill , 240 Wis. 2d 1, ¶12. Therefore, the trial court properly denied Miller's motion to dismiss. Accordingly, we affirm.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

The trial was before the Honorable M. Joseph Donald.

The motion to dismiss and evidentiary hearings were before the Honorable Jeffrey A. Conen due to judicial rotation. Miller's trial counsel from the jury trial had withdrawn, and new counsel had been appointed. Additionally, a different assistant district attorney was assigned to the case for the evidentiary hearing.