COURT OF APPEALS
DECISION
DATED AND FILED

April 26, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1876-CR**

Cir. Ct. No. **2017CF572**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TOMAS JAYMITCHELL HOYLE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Chippewa County: JAMES M. ISAACSON, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. Tomas Hoyle appeals his judgment of conviction for two counts of second-degree sexual assault and two counts of second-degree sexual assault of a child less than sixteen years of age. He also appeals the order denying

his motion for postconviction relief. As relevant to this appeal, Hoyle argues[1] that the prosecutor improperly commented on Hoyle's exercise of his Fifth Amendment privilege not to testify by stating in closing arguments that the evidence was "uncontroverted," that the jury "heard no evidence," and that there was "absolutely no evidence," disputing the alleged victim Hannah's account of the alleged sexual assault.[2]

¶2      We resolve this appeal on the narrowest possible ground. *See Miesen v. DOT*, 226 Wis. 2d 298, 309, 594 N.W.2d 821 (Ct. App. 1999) (court of appeals "should decide cases on the narrowest possible grounds"); *Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive). We conclude the State's repeated argument that the evidence was "uncontroverted" was improper under the circumstances of this case, where the only person who could controvert the alleged victim's testimony was Hoyle. The prosecutor's "uncontroverted" arguments along with the statements that the jury heard "no evidence disputing [Hannah's] account of that sexual assault" and that "[t]here [was] absolutely no evidence disputing [Hannah's] account of what occurred" thus violated Hoyle's Fifth Amendment right not to testify at trial. We therefore reverse and remand for a new trial.

---

[1] Hoyle also argues on appeal that: (1) he is entitled to a new trial based on newly discovered evidence that Hannah never went to counseling; (2) the circuit court erred in denying his postconviction motion for discovery of Hannah's counseling records; and (3) the court erred in denying his postconviction motion alleging a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963).

[2] This matter involves the alleged victim of a crime. Pursuant to WIS. STAT. RULE 809.86(4) (2019-20), we use a pseudonym instead of the alleged victim's name. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

## BACKGROUND

¶3      The State charged Hoyle with four sexual assault offenses that occurred in February 2017:  two counts of second-degree sexual assault in violation of WIS. STAT. § 940.225(2)(a); and two counts of second-degree sexual assault of a child less than sixteen years of age in violation of WIS. STAT. § 948.02(2).  After a two-day trial, the jury found Hoyle guilty on all counts.

¶4      Hannah, then fifteen years old, was the State's primary witness at trial, and its case depended almost entirely upon her credibility.  Hannah disclosed the assault in March 2017 to a school liaison officer, Joseph Nelson.  Nelson interviewed Hannah, and then turned the investigation over to investigator Kari Szotkowski.[3]  Szotkowski then interviewed Hannah regarding the details of the assault; however, Hannah would not identify the assailant.  In May 2017, Hannah identified the assailant to Nelson as Hoyle.

¶5      At trial, Hannah testified that she "had taken some Vicodin and drank some alcohol" throughout the day of the assault.  Hannah further testified that on her way to her friend's house, Hoyle, the older stepbrother of her former best friend, "drove through and asked if [she] wanted to hang out."  Hannah then accepted a ride from Hoyle.

¶6      Hoyle and Hannah drove toward Chippewa Falls.  After driving for some time, Hoyle turned down a dead-end road.  Hannah then got out of the car, and when Hoyle instructed Hannah to get back into the car, Hannah climbed into the back passenger seat.  According to Hannah, Hoyle then joined her in the back

---

[3] Hannah knew Szotkowski as "Kari Anderson."  Szotkowski testified that "Anderson" was her former surname.  To reduce confusion, we will refer to her as Szotkowski.

seat and began to sexually assault her. After the assault, Hoyle returned Hannah to her home and he said, "if anyone finds out about this, someone is going to end up dead."

¶7 Szotkowski was the only other witness for the State. Szotkowski testified that based on the description Hannah provided, she determined that the road where the alleged assault occurred was in Chippewa County. Szotkowski admitted that she did not speak about the incident with Hannah's family members or with the friend whom Hannah was supposed to meet on the day of the assault. Szotkowski also testified that during her interview with Hannah, Hannah made no mention of having anything to drink or being under the influence of drugs at the time of the assault.

¶8 Hoyle exercised his right not to testify, and the defense did not otherwise introduce any evidence. During closing arguments, the prosecutor repeatedly argued, over Hoyle's objection, that Hannah's testimony was "uncontroverted." The prosecutor also stated to the jury that it "heard no evidence disputing [Hannah's] account of that sexual assault" and that "[t]here [was] absolutely no evidence disputing [Hannah's] account of what occurred."

¶9 After his convictions, Hoyle filed a motion for postconviction relief. Hoyle argued that the State improperly commented on Hoyle's right not to testify

in its closing argument.[4]  The circuit court denied Hoyle's postconviction motion. Hoyle now appeals.

## DISCUSSION

¶10    Whether a prosecutor improperly commented on a defendant's exercise of his or her Fifth Amendment right not to testify presents a question of law that is subject to our de novo review.  *See State v. Cockrell*, 2007 WI App 217, ¶14, 306 Wis. 2d 52, 741 N.W.2d 267.  The "Fifth Amendment [privilege against self-incrimination] forbids … comment by the prosecution on the accused's silence."  *Griffin v. California*, 380 U.S. 609, 615 (1965).  Such arguments, if not corrected by the court, amount to "a penalty imposed by courts for exercising a constitutional privilege."  *Id.* at 614.

¶11    Even indirect comments about a defendant's silence will violate the privilege, such as when a prosecutor points out a lack of evidence that only a defendant could provide by waiving his or her privilege.  *See Bies v. State*, 53 Wis. 2d 322, 325-26, 193 N.W.2d 46 (1972); *see also United States v. Cotnam*, 88 F.3d 487, 499 (7th Cir. 1996).  Accordingly, the analysis "for determining whether remarks are directed to a defendant's failure to testify is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"

---

[4] Hoyle also filed his postconviction motion on other grounds.  He argued that he was entitled to a new trial based on newly discovered evidence—specifically that Hannah never went to counseling—that bore on Hannah's demeanor and credibility.  He also argued he was entitled to a new trial based on an alleged *Brady* violation regarding Hannah's initial disclosure of the alleged incident.  Lastly, he asked for postconviction discovery of Hannah's counseling records, child protective services records, and various police reports.

*State v. Johnson*, 121 Wis. 2d 237, 246, 358 N.W.2d 824 (Ct. App. 1984) (citation omitted).

¶12    After *Johnson*, this court set out a three-factor test for determining when a prosecutor's argument can be held "to constitute an improper reference to [a] defendant's failure to testify." *State v. Jaimes*, 2006 WI App 93, ¶21, 292 Wis. 2d 656, 715 N.W.2d 669 (discussing *United States v. Robinson*, 485 U.S. 25, 34 (1988)).    First, "the comment must constitute a reference to [a] defendant's failure to testify." *Jaimes*, 292 Wis. 2d 656, ¶21.    Second, "the comment must propose that the failure to testify demonstrates guilt." *Id.*    Third, "the comment must not be a fair response to a defense argument." *Id.*

¶13    Regarding the first factor, the prosecutor here told the jury that Hannah's testimony was "uncontroverted."    Importantly, the prosecutor went on to note that the jury heard "no evidence disputing [Hannah's] account of that sexual assault" and that "[t]here [was] absolutely no evidence disputing [Hannah's] account of what occurred."    Hoyle argues that the prosecutor "quite clearly, and repeatedly" invited the jury to draw a negative inference from the lack of any evidence controverting Hannah's testimony.    Under the trial record in this case, Hoyle contends that the only witnesses to the alleged assault were Hannah and Hoyle.    Accordingly, the only person who could controvert Hannah's testimony was Hoyle.    Thus, Hoyle asserts "the only way for a jury to accept the prosecutor's invitation to draw a negative inference from the lack of evidence controverting [Hannah]'s account was to draw a negative inference from Hoyle exercising his right not to give such evidence through testimony."    Hoyle argues that this approach, at least under the facts of this case, violated his right against self-incrimination.

6

¶14 At the postconviction hearing, the State relied on *Bies* to defend both its use of the term "uncontroverted" and its statements that the jury "heard no evidence," and that there was "absolutely no evidence" disputing Hannah's account of the alleged sexual assault. In *Bies*, the defendant was convicted of first-degree murder and armed robbery and was sentenced to an indeterminate term of fifteen years' imprisonment for the armed robbery to run concurrently with a mandatory term of life imprisonment for first-degree murder. *Bies*, 53 Wis. 2d at 323. The charges stemmed from the murder and robbery of the victim after Bies and his accomplice, Flann, had been drinking at several bars. *Id.* Flann pleaded guilty to third-degree murder and robbery, and he was the State's chief witness at Bies' trial. *Id.* at 324. During closing argument, the prosecutor observed that certain evidence was uncontroverted. *Id.* at 325. Bies, who chose not to take the stand in his own defense, asserted that the term "uncontroverted" was a comment on his failure to testify. *Id.*

¶15 Like in *Bies*, the State here argues "'uncontroverted' simply means that 'no evidence has been introduced to show the innocence of the defendant,' which is proper grist for the prosecutorial mill." *See id.* In addition, the State argues that the use of the word "uncontroverted" in this case "does not fit the outline of objectionable argument set out in *Johnson*." The State contends *Johnson* reiterated *Bies*' admonition that "[q]uestions about the absence of facts in the record need not be taken as comment on defendant's failure to testify." *See Johnson*, 121 Wis. 2d at 246. The State also argues that *Johnson* said prosecutorial argument is impermissible only if it is "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *See id.*

¶16    The State's reliance on ***Bies*** is misplaced.  As an initial matter, ***Bies*** is not as affirming of the use of the word "uncontroverted" as the State argues.  Our supreme court explained that the State's use of the term "uncontroverted" in ***Bies*** was not violative of the defendant's Fifth Amendment rights because the prosecutor did not use the term "uncontroverted" with respect to any aspect of the case that the defendant actually disputed.

> [T]he defendant's strategy was not to deny the occurrence of the acts surrounding the murder and robbery, but rather to show that his intoxication negated the necessary intent. Since the district attorney's comments referred to evidence of the acts rather than to evidence of intoxication, we conclude that the argument was a proper comment on the testimony.

***Bies***, 53 Wis. 2d at 325-26.  Unlike in ***Bies***, Hoyle did dispute whether the charged "acts" occurred—i.e., the facts germane to Hoyle's guilt were fully disputed.  In fact, Hoyle expressly argued at trial that the State failed to meet its burden of proving that a sexual assault occurred.

¶17    Under these circumstances, the prosecutor's repeated arguments that the evidence regarding the charged assault was "uncontroverted"—especially with his telling the jury that it had "heard no evidence," and that there was "absolutely no evidence" stating otherwise—crossed the line of impermissibly leading the jury to infer that Hoyle's silence was evidence of his guilt.  Hoyle argues, and we agree, that the particular comments made by the prosecutor met the test outlined in ***Jaimes*** because, given the nature of the alleged victim's allegations and the dearth of other facts presented at trial, "the only person who could controvert [Hannah's] testimony was Hoyle."

¶18    Furthermore, as the Seventh Circuit has observed: "It appears obvious that using the word 'uncontroverted' in referring to government evidence … where it is highly unlikely that anyone beyond the non-testifying defendant could contradict the evidence, is just as improper as using the words 'uncontradicted,' 'undenied,' 'unrebutted,' 'undisputed,' and 'unchallenged' in the same situation." *Cotnam*, 88 F.3d at 499 (collecting cases); *Freeman v. Lane*, 962 F.2d 1252, 1254, 1259-61 (7th Cir. 1992) (prosecutor's use of "unrebutted," uncontradicted," and "no evidence" to summarize State's case during closing argument amounted to Fifth Amendment violation when defendant was the only one who could refute allegations).  We agree with this stated rationale.  As such, the prosecutor's particular comments in this case necessarily constituted a reference to Hoyle's failure to testify and therefore met the first factor laid out in *Jaimes*.

¶19    The second factor in *Jaimes* is whether the comment on the failure to testify "propose[d] that the failure to testify demonstrates guilt."  *Jaimes*, 292 Wis. 2d 656, ¶21.  This factor is met here because the prosecutor specifically argued that the lack of evidence disputing Hannah's testimony—which again, under the facts in this case, could only have come from Hoyle—was what demonstrated Hoyle's guilt.  The last factor in *Jaimes* is that the defense's argument did not invite the prosecutor's comment.  *See id.*  The State does not raise any argument on this factor, instead contending it "does not come into play."

¶20    For the foregoing reasons, we conclude that the State's repeated use of the term "uncontroverted"—a key matter which Hoyle plainly disputed—in a factual context where no one but Hoyle could contradict the only evidence of guilt presented at trial, was improper and violated his Fifth Amendment right not to testify at trial.  This is particularly true where, as here, in addition to using the term "uncontroverted," the State followed up by expressly arguing to the jury that it had

9

"heard no evidence disputing [Hannah's] account of that sexual assault," and that there was "absolutely no evidence disputing [Hannah's] account of what occurred." We therefore reverse the circuit court's judgment and order and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.