STATE of Wisconsin, Plaintiff-Appellant,

v.

John A. LETTICE, Defendant-Respondent.

Court of Appeals

*No. 96–0140–CR. Submitted on briefs September 4, 1996.—Decided October 1, 1996.*

(Also reported in 556 N.W.2d 376.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, *Mary E. Burke*, assistant attorney general, and *Roy L. Korte*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Keith A. Kindley* and *Suzanne Hagopian*, assistant state public defenders.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   The State appeals an order granting John Lettice's motion for a new trial. The State argues that there was insufficient evidence of prosecutorial misconduct, Lettice received competent representation, and Lettice's due process rights were not violated. In the alternative, the State argues that even if its criminal charge against Lettice's defense attorney was misguided, a new trial is unwarranted. We disagree and affirm the order.

On March 17, 1993, Lettice was charged with two counts of first-degree sexual assault. The alleged victim was Lettice's three-year-old daughter, D.L. This appeal arises from the conduct of Vilas County District Attorney Steve Lucareli. On the afternoon of Friday, March 4, 1994, just three days before the scheduled start of the Lettice trial, the parties appeared in court to argue motions. At that time, Lucareli served Lettice's defense attorney, Dennis Burgy, with a criminal complaint charging Burgy with publicly disclosing a confidential medical record contrary to § 146.82, STATS.[1]

---

[1] Section 146.82, STATS., protects the confidentiality of patient health care records. The statute provides that all such

The medical record at issue was a page of handwritten notes from the files of the State's expert, Dr. Gina Koeppl. Koeppl, a psychologist, saw D.L. several times at Lucareli's request to determine whether D.L. had been sexually assaulted and what services she needed. Koeppl interviewed D.L., performed diagnostic and evaluative services for D.L., and referred her to another doctor.

Burgy filed motions requesting access to Koeppl's records, or, in the alternative, for in camera inspection of those records. At a September 17, 1993, motion hearing, the court ordered an in camera inspection of the records and ruled that Koeppl's notes were not confidential treatment records.

In a motion dated February 11, 1994, Burgy moved the trial court to admit evidence tending to show that D.L. had sexual contact with a person other than Lettice. Included with his written offer of proof was Koeppl's one-page report, which contained information that D.L. had named a perpetrator other than Lettice. The criminal complaint against Burgy charged that he violated § 146.82, Stats., when he filed the motion with a copy of this report attached.

After he served Burgy with the complaint on March 4, Lucareli filed a motion to disqualify Burgy and his associates from further representation of Lettice because of a conflict of interest. The trial court denied the motion. Lucareli then petitioned this court

---

records shall remain confidential, but contains a lengthy list of exceptions. A person who knowingly and wilfully violates the statute is liable to the person injured by the disclosure for actual damages, and exemplary damages of $1,000. Section 146.84(1)(b), Stats. A person who unlawfully discloses confidential information may be fined not more than $1,000 or imprisoned for not more than six months or both. Section 146.84(2), Stats.

for an ex parte stay of the proceedings and for leave to file a petition for interlocutory appeal. This court denied the request.

As a result of the charges, Burgy spent the next few days researching the law applicable to the charge against him, rather than devoting his time to preparation for the Lettice trial. He was unable to sleep Sunday and Monday because he was preoccupied with the charge. Burgy slept normally only after he sought medical attention and was prescribed sleeping pills.

On Monday, March 7, Burgy moved to dismiss the case against Lettice on grounds of prosecutorial misconduct. The motion was denied, and the jury trial commenced. The trial court described the case as extremely hard fought on both sides, and an extremely close case. The victim did not testify, there was no physical evidence of the assault, and the trial unfolded in the midst of an ongoing divorce and custody battle. The jury convicted Lettice on both counts.

Two days after the jury trial ended, Lucareli filed a motion to dismiss the charge against Burgy in the interest of justice and judicial economy. By order dated March 21, 1994, the trial judge granted the motion.

Lettice filed a postconviction motion, asserting that prosecutorial misconduct created a conflict of interest that interfered with Burgy's ability to effectively represent Lettice. The court found that there was no conflict of interest, but ordered a new trial in the interest of justice, to preserve the integrity of the judicial process, and because the prosecutor's misconduct deprived Lettice of his rights to counsel and due process. It is from this order that the State now appeals.

Our review of the trial court's decision to grant a new trial is deferential. *State v. Bembenek*, 111 Wis. 2d 617, 634, 331 N.W.2d 616, 625 (Ct. App. 1983). The determination of whether prosecutorial misconduct occurred and whether such conduct requires a new trial is within the trial court's discretion. *Id.* "An appellate court will sustain a discretionary act if the trial court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach." *City of Muskego v. Godec*, 167 Wis. 2d 536, 546, 482 N.W.2d 79, 83 (1992).

Prosecutorial misconduct "can rise to such a level that the defendant is denied his or her due process right to a fair trial." *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498, 501 (Ct. App. 1992). If the misconduct "poisons the entire atmosphere of the trial," it violates due process. *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir. 1988). As stated by the court, "When the seriousness of prosecutorial misconduct and the weakness of evidence of guilt cause us to question a trial's fairness, we will not hesitate to reverse the resulting conviction and order a new trial." *Id.* at 427. Unless the government can demonstrate beyond a reasonable doubt that the error was harmless, reversal is warranted. *Id.* at 425.

Reversing a criminal conviction on the basis of prosecutorial misconduct is a "drastic step" that "should be approached with caution." *State v. Ruiz*, 118 Wis. 2d 177, 202, 347 N.W.2d 352, 364 (1984). In order to determine whether a new trial is warranted

the court must balance a number of factors, including the following:

> the defendant's interest in being tried on evidence validly before the jury; the public's interest in having the guilty punished; the public's interest in not burdening the administration of justice with undue financial or administrative costs; the public's interest that the judicial process shall both appear fair and be fair in fact; and the interest of the individuals involved — "the witnesses and family of the victim" — not to be subjected to undue trauma, embarrassment or inconvenience.

*Id.* We review allegations of prosecutorial misconduct in light of the entire record of the case. *See United States v. Mealy*, 851 F.2d 890, 903 (7th Cir. 1988).

■

In Wisconsin, the district attorney has great discretion in deciding whether to file criminal charges. *Sears v. State*, 94 Wis. 2d 128, 133, 287 N.W.2d 785, 787 (1980). However, when the district attorney initiates a prosecution without sufficient evidence to support a conviction, or for coercive reasons, he has abused his discretion. *Thompson v. State*, 61 Wis. 2d 325, 329-30, 212 N.W.2d 109, 111 (1973).

The trial court found that there was no probable cause to support the charge against Burgy, and we agree. Before Lucareli filed the charge, the court had specifically ruled that the one-page record of Koeppl's notes was not a confidential health care record covered by § 146.82, STATS. Therefore, Burgy acted in accordance with the court's ruling, and did not violate § 146.82 when he filed a copy of the report. The suggestion in the state's brief that Lucareli "may have

forgotten" about the court's ruling is an unacceptable excuse for his behavior.

The trial court criticized Lucareli's motives for filing the charge on the eve of trial. Assistant District Attorney Strong testified that Lucareli told him three or four times within a period of two days that he needed an adjournment in the *Lettice* trial. In the district attorney's office two days later, Strong saw Lucareli pull a document from the *Lettice* file and say "this is it," or something to that effect. Strong recognized the document as Koeppl's report, and Lucareli initiated a discussion with Strong as to whether the document was covered under ch. 146, STATS. Lucareli testified that he filed the charge to protect D.L. and to ensure that Burgy filed no further medical reports. The court was not persuaded by Lucareli's testimony, and neither are we.

Instead, the evidence supports the trial court's finding that Lucareli filed the charge either to disqualify Burgy or to delay the jury trial. Lucareli's intentional misconduct had a profoundly negative impact on Burgy's ability to effectively represent Lettice. The cumulative effect of Burgy's errors deprived Lettice of his due process right to a fair trial. Burgy testified that he spent time over the weekend researching the charge against him, rather than preparing for the *Lettice* trial, and was so preoccupied with the charge that he did not sleep for two nights.

In addition, the trial court noted specific instances of Burgy's ineffectiveness. We defer to the trial judge's perceptions because he was able to observe the parties' behavior and the jury's reaction during the trial. *See Mealy*, 851 F.2d at 903. The judge recalled that when Lettice's wife took the stand as a witness for the State, she testified about a room in their basement where

Lettice "worked out, where he kept his Playboy magazines, where he masturbated, and [where] some of the child's toys were kept." Despite the highly prejudicial nature of the testimony, Burgy did not object.

An assistant district attorney testified that Burgy looked like a "whipped dog" during the trial. Another attorney described Burgy as incoherent at times. During the jury trial, one of the State's witnesses commented on the way Burgy's hands shook, and the next day Lucareli questioned another witness as to whether Burgy's shaky hands were a nonverbal cue that would "tell you anything." At the postconviction hearing, Burgy testified that the charge filed against him hampered his trial performance, and that his demeanor contributed to the jury's guilty verdicts. The trial court directly attributed Burgy's ineffectiveness to Lucareli's misconduct.

■

We agree with the trial court that prosecutorial misconduct deprived Lettice of a fair trial and prejudiced his defense, especially in light of the closeness of the case and the seriousness of Lucareli's misconduct.[2] We therefore affirm the order for a new trial.

*By the Court.*—Order affirmed.

■■■■

[2] Although the court granted a new trial in the interest of justice, to preserve the integrity of the judicial process, and because the prosecutor's misconduct deprived Lettice of his rights to counsel and due process, we affirm the order of the court on due process grounds. Because that issue disposes of the appeal, we do not reach the merits of Lettice's confrontation clause argument.