# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1023-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF1626

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CRISTIAN M. LOGA-NEGRU,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Racine County: EUGENE A. GASIORKIEWICZ, Judge. *Affirmed.*

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cristian M. Loga-Negru appeals pro se from a judgment of conviction and orders denying his postconviction motions. He raises claims relating to competency, the right to counsel, an alleged **Brady**[1] violation, plea withdrawal, his trial counsel's performance, and alleged prosecutorial misconduct. For the reasons that follow, we affirm.

¶2 On November 19, 2014, Village of Mount Pleasant police responded to reports of screaming outside of a residence and a female being dragged into a car. Upon arrival, they were met by a man who informed them that the victim had been kidnapped by her estranged husband, Loga-Negru. The man explained that he was the victim's employer and that she had been staying with him because she "was involved in an abusive relationship and felt threatened for her life." Police observed drag marks on the ground and located a black, metal hatchet with strands of what appeared to be human hair and blood.

¶3 While at the scene, police were advised of an emergency call about a female with an ax or hatchet injury at a nearby hotel. Police went to the hotel and found Loga-Negru standing over a woman lying in the backseat of a vehicle. The woman—Loga-Negru's estranged wife—was covered in blood and appeared lifeless. She soon succumbed to her injuries, which included "multiple chop wounds and blunt force injuries." Loga-Negru asked police if they could give him the death penalty right then and shoot him.

¶4 Police executed a search warrant of Loga-Negru's hotel room and found a copy of a restraining order that the victim had obtained against him. In

---

[1] *See* **Brady v. Maryland**, 373 U.S. 83 (1963).

addition, they found a receipt showing that Loga-Negru had attempted to purchase a pistol the day before.

¶5 Also present at the hotel was Loga-Negru's father, Marius. Marius told police that he had flown into the country three days earlier from Romania where he and his son are from. He said that his son had been having "marital problems" and that law enforcement recently confiscated his son's gun due to a domestic incident. Marius said that his son had left the hotel and returned covered in blood. When Marius asked what had happened, Loga-Negru replied that he had killed his estranged wife.

¶6 On November 21, 2014, the State filed a complaint charging Loga-Negru with first-degree intentional homicide, mayhem, and kidnapping. That same day, Loga-Negru made an initial appearance with Attorney Patrick Cafferty, who was covering intake for the State Public Defender. Cafferty requested that Loga-Negru undergo a competency evaluation, explaining, "There does appear to be some evidence of recent interaction with mental health professionals. And based on my conversation with him, I think … there are competency issues that need to be addressed."

¶7 After a finding of probable cause for the crimes, the circuit court issued an order for a competency evaluation. An appointed psychologist examined Loga-Negru and filed a report on December 10, 2014. In it, he concluded that while Loga-Negru suffered from depression, he was competent to stand trial and "demonstrated the substantial mental capacity to understand the legal proceedings and assist in his defense."

¶8 The next day, the circuit court held a status on the case. The State noted that Loga-Negru did not qualify for State Public Defender representation

3

and had not retained counsel. Loga-Negru indicated that he had spoken with an attorney and requested a three-week adjournment. The court denied the request, reasoning that Loga-Negru had had ample time to seek counsel. It further noted that Loga-Negru held two law degrees himself—one from Romania and one from the John Marshall School of Law. Accordingly, it set the matter over for the following week.

¶9   The next week, the circuit court held another status on the case. Again, Loga-Negru appeared without counsel, informing the court that he would soon secure the funds to hire one. The court inquired whether Loga-Negru challenged his competency to stand trial. Loga-Negru answered, "No. I believe that I am competent to stand trial." The State also did not challenge Loga-Negru's competency. The court made a record, noting that at the last appearance Loga-Negru's "demeanor was totally appropriate," he had "responded to the Court's questions appropriately," and he was "on track with the Court not only physically, but emotionally and intelligently." Based on its observations and the psychologist's uncontested report, the court found Loga-Negru competent to proceed.

¶10   On December 30, 2014, Cafferty filed a notice of appearance indicating that Loga-Negru had retained him as counsel. He also filed a demand for discovery and waiver of the preliminary hearing. The State, in turn, filed an information, charging Loga-Negru with the same crimes as in the initial complaint.

¶11   Loga-Negru entered a plea of not guilty by reason of mental disease or defect (NGI). He subsequently reached an agreement with the State where he would plead no contest to the charge of first-degree intentional homicide in the

first/guilt phase of the NGI trial. In exchange, the State would dismiss the mayhem and kidnapping charges. The State filed an amended information to reflect this agreement.

¶12 Upon entry of Loga-Negru's no contest plea, the matter proceeded to the second/responsibility phase of the NGI trial, which was held before the circuit court in July 2016. The parties presented competing experts regarding Loga-Negru's ability to conform his conduct to the requirements of law. Ultimately, the court found the State's expert more credible and concluded that Loga-Negru had "not met his burden to support his NGI plea." It then sentenced him to life imprisonment with the possibility of extended supervision after thirty years.

¶13 After sentencing, Loga-Negru elected to proceed pro se and filed several postconviction motions for relief. He argued, among other things, that (1) the circuit court erred in determining his competency to stand trial; (2) he was improperly deprived of counsel at the court's competency determination; (3) the State committed a *Brady* violation when it failed to disclose certain evidence; (4) he is entitled to plea withdrawal due to a breach of his plea agreement; (5) his trial counsel was ineffective; and (6) the prosecutor engaged in misconduct. Following multiple hearings, the circuit court denied the motions in two orders. This appeal follows.

¶14 On appeal, Loga-Negru first contends that the circuit court erred in determining his competency to stand trial. He argues that the court wrongly found him competent to proceed and suggests that he only claimed he was competent due to pressure applied to his father.

¶15 A circuit court's competency determination is functionally a factual one, and we review it under the clearly erroneous standard of review. *State v.*

*Smith*, 2016 WI 23, ¶26, 367 Wis. 2d 483, 878 N.W.2d 135. Therefore, we will uphold the competency determination unless it is totally unsupported by facts in the record. *Id.*, ¶29.

¶16 Here, we are satisfied that the circuit court properly determined Loga-Negru's competency to proceed. The court ordered a competency evaluation after Loga-Negru's counsel raised the issue at the initial appearance. That evaluation concluded that Loga-Negru "demonstrated the substantial mental capacity to understand the legal proceedings and assist in his defense." Neither party contested this conclusion, and it was fully supported by the court's observations. Under these circumstances, we cannot say that the competency determination is totally unsupported by facts in the record.

¶17 By contrast, there is no support for Loga-Negru's assertion that he only claimed he was competent due to pressure applied to his father. As noted by the State, this is especially damning given the fact that Loga-Negru called his father to testify at the postconviction hearings but never asked him about the alleged pressure. Accordingly, we decline to discuss the matter further. *See State v. Williams*, 230 Wis. 2d 50, 55, 601 N.W.2d 838 (Ct. App. 1999) ("A party who has the burden of proof cannot leave the court in an evidentiary vacuum.").

¶18 Loga-Negru next contends that he was improperly deprived of counsel at the circuit court's competency determination. Again, at the time of the determination, Loga-Negru did not qualify for State Public Defender representation and had not retained counsel.

¶19 The absence of counsel at a critical stage of the criminal process requires automatic reversal only when "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Satterwhite v.*

*Texas*, 486 U.S. 249, 257 (1988). Otherwise, a harmless error analysis may be employed. *Id.*

¶20 We are not persuaded that the absence of counsel during the competency determination affected and contaminated Loga-Negru's case. The issue of competency can be raised at any time in a criminal proceeding. *See* WIS. STAT. § 971.14(1r)(a) (2019-20).[2] Thus, Loga-Negru could have re-raised the issue after retaining Cafferty as counsel but failed to do so. At any rate, Cafferty denied that competency was still a concern at the change of plea hearing. There, he told the court, "[W]e are of the belief that at this point in time [Loga-Negru] is competent. Competency was previously raised. Obviously the NGI is pending before the Court at this point, but his current state is such that … I have been able to communicate with him without issue." For these reasons, we conclude that the absence of counsel at the competency determination, if erroneous, was harmless.

¶21 Loga-Negru next contends that the State committed a *Brady* violation when it failed to disclose certain evidence. In particular, he complains that he did not receive recordings of the 911 calls that alerted police to the victim's injuries.[3]

¶22 Criminal defendants have a due process right to favorable evidence in the State's possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). When

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version.

[3] Loga-Negru also complains that he did not receive a photo of the victim and a video of the crime scene at the hotel. Because Loga-Negru did not raise these complaints in the circuit court, he cannot raise them now. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. Even if we were to look past this forfeiture, Loga-Negru has not explained how such evidence was favorable and material to his case.

7

reviewing a *Brady* claim on appeal, we accept the circuit court's factual findings unless they are clearly erroneous, but we determine independently whether a due process violation has occurred. *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468.

¶23 To establish a *Brady* violation, a defendant must prove that: (1) the evidence at issue is favorable to the accused; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material. *Wayerski*, 385 Wis. 2d 344, ¶35. Evidence is material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. *State v. Harris*, 2004 WI 64, ¶14, 272 Wis. 2d 80, 680 N.W.2d 737.

¶24 In this case, there are multiple problems with Loga-Negru's *Brady* claim. To begin, based on the statement of the prosecutor, the circuit court found that Cafferty was provided the recordings at issue in March 2015—well before the case was resolved. Loga-Negru has not shown that this finding is clearly erroneous. Moreover, Loga-Negru has not explained how the recordings were favorable and material to his case. Again, by virtue of his pleas, Loga-Negru conceded guilt and was only contesting mental responsibility.

¶25 Loga-Negru next contends that he is entitled to plea withdrawal due to a breach of his plea agreement. He accuses the State of misstating the terms of the agreement because it did not specifically mention dismissal of the mayhem and kidnapping charges.

¶26 A defendant who seeks to withdraw a plea after sentencing must prove by clear and convincing evidence that withdrawal is necessary to avoid a manifest injustice. *See State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829

N.W.2d 482. One way to show a manifest injustice is to demonstrate a material and substantial breach of a plea agreement. **State v. Bangert**, 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986).

¶27 Loga-Negru has not come close to demonstrating a material and substantial breach of his plea agreement. As noted, the State filed an amended information to reflect its agreement with Loga-Negru. That agreement omitted the mayhem and kidnapping charges, thereby effectively dismissing them from the case. This caused the postconviction court to tell Loga-Negru, "Whatever plea agreement you thought you had was indeed honored by the State. You did receive, sir, the benefit of every bargain that was made." We agree.

¶28 Loga-Negru next contends that his trial counsel was ineffective. He asserts that counsel "must have" provided ineffective assistance of counsel based on a litany of complaints concerning counsel's "failure to investigate, to challenge the prosecution on various grounds, research evidence, [and] utilize witnesses."[4]

¶29 To the extent that Loga-Negru is complaining about trial counsel's pre-plea performance, he has forfeited the right to do so. That is because his no contest plea forfeited all nonjurisdictional defects, including constitutional claims. *See* **State v. Kelty**, 2006 WI 101, ¶18 & n.11, 294 Wis. 2d 62, 716 N.W.2d 886.[5] In any event, all of Loga-Negru's complaints about counsel's performance suffer

---

[4] Loga-Negru also appears to fault trial counsel for not recognizing the alleged **Brady** violation and breach of the plea agreement. We have already explained why those issues are without merit and will not discuss them further.

[5] In addition, at the plea hearing, Loga-Negru expressed satisfaction with the representation that trial counsel had provided up to that point. He cannot take an inconsistent position now. *See* **State v. Michels**, 141 Wis. 2d 81, 97-98, 414 N.W.2d 311 (Ct. App. 1987).

from the same two flaws:  they are conclusory and undeveloped.  Accordingly, we decline to address them.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶30    Finally, Loga-Negru contends that the prosecutor engaged in misconduct.  His argument is difficult to follow; however, he appears to be accusing the State of bias, which allegedly manifested itself in plea negotiations and the State's handling of expert witnesses.

¶31    Whether prosecutorial misconduct occurred is left to the circuit court's discretion.  *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996).  At the last postconviction hearing, the circuit court expressly rejected Loga-Negru's allegation of bias against the State.  Nothing in the record or in Loga-Negru's briefs persuades us that this was an erroneous exercise of discretion.[6]

> *By the Court.*—Judgment and orders affirmed.

> This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] To the extent we have not addressed an argument raised by Loga-Negru on appeal, the argument is deemed rejected. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).