COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2023AP844-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2013CF3029

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

ALEXANDER T. MCGEE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  DAVID L. BOROWSKI, Judge.  *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Alexander T. McGee appeals the judgment, entered pursuant to a jury's verdict, convicting him of first-degree sexual assault with use

of a dangerous weapon and as an act of domestic abuse, burglary, and false imprisonment. He also appeals from the circuit court's order denying, without a hearing, his motion for postconviction relief based on prosecutorial misconduct and ineffective assistance of counsel. We affirm.

## BACKGROUND

¶2      On July 3, 2013, the State charged McGee with first-degree sexual assault with use of a dangerous weapon and as an act of domestic abuse, burglary, and false imprisonment. The charges arose out of allegations that in late June 2013, McGee broke into the house of his child's mother, Tracy,[1] and attacked her when she returned home from work. According to the criminal complaint, McGee repeatedly struck Tracy in the face, bound her mouth and hands with duct tape, and threatened to kill her with a knife before sexually assaulting her.

¶3      McGee proceeded to trial. During voir dire, the State posed a series of hypothetical scenarios and asked the jury questions about them, seemingly aimed at determining what amount and types of evidence different jurors wanted before they would conclude something had been proven beyond a reasonable doubt. McGee did not object, and he did not move for a mistrial on the basis of the State's questioning.

¶4      Tracy testified that McGee was the father of one of her children, and prior to the incident, they had a co-parenting, nonromantic relationship. She said that when she got home from work on June 29, 2013, McGee was in her house

---

[1] We use a pseudonym to refer to the victim in this case "to better protect the privacy and dignity interest of crime victims." WIS. STAT. RULE 809.86(1) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

without her permission hiding behind a couch. McGee jumped at Tracy, and a struggle ensued. According to Tracy, McGee repeatedly hit her in the face before sitting on her chest to restrain her. Armed with a knife and duct tape, McGee repeatedly attempted to bind Tracy's mouth and wrists, but she was able to keep ripping the tape off. McGee eventually forced Tracy into an upstairs bedroom at knifepoint and again restrained her by sitting on her chest while ripping off pieces of duct tape and sticking them on the ceiling, which slanted over the bed. Tracy eventually calmed McGee down, and he stopped restraining her. Sometime later, with the knife beside him, McGee took off Tracy's clothes, and he had mouth-to-vagina intercourse and penis-to-vagina intercourse with her. Tracy did not want to have sex with McGee, but she felt she had no choice in the matter, and "[she] just didn't want to die." McGee fell asleep with his arm around Tracy, and every ten minutes or so, she moved slightly further away from McGee until she was eventually able to slide out from under him. Tracy then ran to a neighbor's house, and the neighbor called 911. The sexual assault nurse that examined Tracy the night of the incident testified that although she could not determine the cause of Tracy's injuries, they were consistent with Tracy's version of events.

¶5    McGee testified on his own behalf, claiming that he and Tracy had plans at her house for when she got off work that "maybe" included sex, and while he was at her house, she threatened him with a knife after discovering evidence of McGee's infidelity. According to McGee, Tracy swung the knife at him and he struck her several times in self defense. McGee testified that Tracy then calmed down, and they had consensual sex initiated by Tracy. McGee said that the next morning, he woke up to Tracy holding a knife over him, and she told McGee that she wanted to kill him after going through his phone and finding pictures and video of him having sex with other women. Tracy allegedly led McGee downstairs at

knifepoint, stating that if she could not have McGee, then nobody could. McGee claims that he made a break for it, ran back upstairs, gathered some belongings, and kicked out the upstairs window to escape.

¶6 The jury convicted McGee on all counts, and the circuit court imposed a combined sentence of fifteen years of initial confinement followed by seven years of extended supervision. McGee filed a postconviction motion arguing that the State's hypothetical scenarios during voir dire constituted prosecutorial misconduct entitling him to a new trial, and that his trial counsel was ineffective for failing to (1) object to the State's hypothetical scenarios and (2) investigate a witness that would have corroborated Tracy's alleged motive to fabricate her testimony as retribution for McGee's infidelity. The circuit court denied McGee's motion without a hearing.

¶7 McGee appeals. Additional relevant facts are discussed below.

## DISCUSSION

### I. McGee's prosecutorial misconduct claim does not constitute plain error.

¶8 McGee first argues that the State committed prosecutorial misconduct when it posed a series of hypothetical scenarios to the jury impermissibly affecting how it would deliberate and weigh different types of evidence, and that this misconduct constitutes plain error entitling him to a new trial.[2]

---

[2] Because McGee did not object to the State's voir dire questioning, which is the basis of his prosecutorial misconduct claim, he has forfeited direct review of the claim, and we analyze it only for plain error or ineffective assistance of counsel. *State v. Mercado*, 2021 WI 2, ¶37, 395 Wis. 2d 296, 953 N.W.2d 337.

¶9 "Prosecutorial misconduct 'can rise to such a level that the defendant is denied his or her due process right to a fair trial.'" *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996) (citation omitted). However, reversing a conviction on the basis of prosecutorial misconduct is a "drastic step" that is reserved for cases where the misconduct "poison[ed] the entire atmosphere of the trial[.]" *Id.* (citation omitted). Reversal is not warranted if the State "can demonstrate beyond a reasonable doubt that the error was harmless[.]" *Id.*

¶10 A court does not remedy errors under the plain error doctrine unless they are "obvious and substantial[,]" and "'so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (citation omitted). Courts reverse based on plain error "sparingly," *id.*, because it is "reserved for cases where there is the likelihood that the erroneous introduction of evidence has denied a defendant a basic constitutional right[,]" *State v. Sonnenberg*, 117 Wis. 2d 159, 178, 344 N.W.2d 95 (1984). Whether a plain error violated a defendant's right to due process is a question of law that we review independently. *State v. Bell*, 2018 WI 28, ¶8, 380 Wis. 2d 616, 909 N.W.2d 750.

¶11 During voir dire, the State's prosecutor, Erin Karshen, used several hypothetical scenarios in an apparent attempt to ascertain what types of evidence the jurors would want before they would conclude something had been proven beyond a reasonable doubt. As is relevant here and without reproducing the entire exchange, Karshen detailed her commute to work that morning, spoke about her family make-up, discussed the health of her pets, and asked whether the jurors would, essentially, accept her hypothetical testimony as evidence, or if they would want some type of corroborating evidence to support her statements. After some of the jurors expressed that they would prefer corroborating evidence, the court

interrupted to clarify the point Karshen was trying to make about witness testimony. The court instructed the jury, "Testimony from witnesses is evidence .... [Y]ou can either believe that [testimony] or not believe that [testimony] based on a lot of things, a lot of factors, credibility, other evidence, jury instructions that I'm going to give you, but testimony is evidence."

¶12    Although WIS. STAT. § 805.08(1) prohibits examination of a jury "based upon hypothetical questions[,]" we are asked to determine whether Karshen's violation of the statute constituted prosecutorial misconduct that so "poison[ed] the entire atmosphere of the trial," *Lettice*, 205 Wis. 2d at 352, that we should take the "drastic step" of reversing McGee's convictions, *State v. Ruiz*, 118 Wis. 2d 177, 202, 347 N.W.2d 352 (1984).  We agree with the circuit court that while the prosecutor's questioning "went too far afield," it did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Neuser*, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995) (citations omitted).  The court interrupted the prosecutor to clarify the point she was trying to make about witness testimony qualifying as evidence, and the jury was instructed after selection and at the conclusion of the trial regarding burden of proof, the meaning of "reasonable doubt," what qualifies as evidence and what does not, the meaning of circumstantial evidence, how to consider the credibility of witnesses, and that the remarks and comments of attorneys are not evidence.  Jurors are presumed to have followed the jury instructions.  *State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶13    In light of the court's clarification during the voir dire questioning, its later instructions, and the presumption that jurors follow those instructions, we agree with the circuit court that McGee has not demonstrated that the prosecutor's voir dire questioning constituted an error "'so fundamental that a new trial or other relief

must be granted even though the action was not objected to at the time.'" ***Jorgensen***, 310 Wis. 2d 138, ¶21 (citation omitted).

## II. Trial counsel was not ineffective.

¶14 McGee also argues on appeal that his trial counsel was ineffective in several ways. In rejecting McGee's ineffective assistance challenges without a hearing, the circuit court applied the two-pronged test for deficient performance and prejudice established in ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). "When a circuit court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a ***Machner***[3] hearing, the issue for the court of appeals ... is whether the defendant's motion alleged sufficient facts entitling [the defendant] to a hearing." ***State v. Sholar***, 2018 WI 53, ¶51, 381 Wis. 2d 560, 912 N.W.2d 89. However, even if the motion alleges specific facts, "an evidentiary hearing is not mandatory if a defendant's motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief." ***State v. Ruffin***, 2022 WI 34, ¶38, 401 Wis. 2d 619, 974 N.W.2d 432.

¶15 To establish deficient performance, the motion must specifically allege more than that counsel's performance was "imperfect or less than ideal." ***State v. Balliette***, 2011 WI 79, ¶22, 336 Wis. 2d 358, 805 N.W.2d 334. There is a strong presumption that counsel performed reasonably, and the question is "whether the attorney's performance was reasonably effective considering all the circumstances." ***Id.***, ¶¶22, 25-28.

---

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶16    The motion must also allege prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In order to satisfy this prong, the defendant must allege more than "that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  "[R]ank speculation" is insufficient.  *State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999).

¶17    Whether a postconviction motion is sufficient on its face to require an evidentiary hearing and whether the record conclusively demonstrates that the defendant is not entitled to relief are both questions of law that we review independently of the circuit court, while benefiting from its analysis.  *Ruffin*, 401 Wis. 2d 619, ¶27; *Balliette*, 336 Wis. 2d 358, ¶18.

### a. Trial counsel was not ineffective for failing to object to the State's hypothetical scenarios during voir dire.

¶18    McGee argues that trial counsel should have objected to the State's series of hypothetical scenarios during voir dire.  For the same reasons that we conclude the State's voir dire questioning did not constitute plain error, we determine that the record conclusively demonstrates that McGee was not prejudiced by counsel's performance.

¶19    As we discussed above, the court interrupted the State during voir dire to clarify the point the prosecutor was trying to make about witness testimony, specifically instructing the jury, "Testimony from witnesses is evidence.... [Y]ou can either believe [the testimony] or not believe [the testimony] based on a lot of things, a lot of factors, credibility, other evidence, jury instructions that I'm going

to give you, but testimony is evidence." The jury was also instructed after selection and at the conclusion of the trial on the burden of proof, the meaning of "reasonable doubt," what evidence is and what it is not, the meaning of circumstantial evidence, how to consider the credibility of witnesses, and that the remarks and comments of attorneys are not evidence. Jurors are presumed to have followed the jury instructions. *LaCount*, 310 Wis. 2d 85, ¶23.

¶20 In light of the court's clarification during the voir dire questioning, its later instructions, and the presumption that jurors follow those instructions, the record conclusively demonstrates that there is not a reasonable probability that the result of the trial would have been different had trial counsel objected to the State's voir dire questioning. *Strickland*, 466 U.S. at 694. Therefore, we agree with the circuit court that trial counsel was not ineffective for failing to object during voir dire.

### b. Trial counsel was not ineffective for failing to investigate a corroborative witness.

¶21 McGee's final argument on appeal is that trial counsel should have investigated Jacqueline Evans, who allegedly would have testified that Tracy told her that she was going to frame McGee due to his infidelity. McGee filed an affidavit from Evans wherein she stated that Tracy called her from McGee's cell phone on the morning of the incident. Evans claimed that Tracy admitted to pulling a knife on McGee after discovering pictures of McGee and Evans on McGee's phone, and that McGee head-butted Tracy in the nose to prevent her from stabbing him. According to Evans, Tracy told her that she was going to "put something on [McGee] that neither one of us will end up being with him." Evans stated that she tried to contact McGee's attorney with this information, but nobody followed up

with her. McGee argues that Evans's testimony would have strongly supported McGee's trial testimony in a case that was otherwise a credibility contest.

¶22    We agree with the circuit court that McGee has not shown prejudice. It correctly observed:

> [Tracy] gave credible and compelling testimony that [McGee] unlawfully entered her home, beat her in the face, confined her without her consent and had non-consensual sex with her under threat of the use of a dangerous weapon. Her testimony was corroborated by the physical and circumstantial evidence. In contrast, [McGee] offered fantastical explanations for the evidence. [McGee] claimed that he head-butted [Tracy] in the face in an act of self-defense, leaving her with a broken nose and two black eyes, and that what followed was a night of heavy passion, where [Tracy], with one eye swollen shut and a nose she could not breathe out of, performed oral sex on him before demanding that [McGee] "make love to her like [he] never made love to her before." [McGee's] description of the various sexual positions he claims he got into with the severely battered [Tracy] was over-the-top and in a word, bizarre. His claim that he was then held at knifepoint for a second time by [Tracy], still with her broken nose and one functioning eye, was equally bizarre. And his testimony that the duct tape was already hanging from the ceiling defies logic. All of this testimony was capped off by [McGee's] claim that while making his rooftop escape to save his life, he paused to toss the broken glass from the window behind him, and yet, he did not report anything about this incident to the police.
>
> There is no other reasonable conclusion to make other than that [McGee] concocted this outlandish narrative to explain away the obvious scene of a break-in and a violent sexual assault. None of [McGee's] postconviction claims make his incredible tale any more believable, and therefore, [McGee] has not shown that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different.

¶23    Evans had no personal knowledge of the events, and her statements that Tracy told her that she was going to "put something on" McGee do not strongly corroborate McGee's testimony regarding the details of the incident in light of the

10

physical and circumstantial evidence. Accordingly, we agree with the circuit court and the State that trial counsel was not ineffective for failing to follow up with Evans.

## CONCLUSION

¶24 We conclude that the circuit court properly denied without a hearing McGee's claims for postconviction relief based on prosecutorial misconduct and ineffective assistance of counsel. We therefore affirm the judgment of conviction and the order denying McGee's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.