COURT OF APPEALS
DECISION
DATED AND FILED

October 1, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1636-CR**

Cir. Ct. No. **2018CM120**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD A. HOEFT,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Price County: KEVIN G. KLEIN, Judge. *Affirmed*.

¶1    HRUZ, J.[1]  Richard A. Hoeft, pro se, appeals from a judgment convicting him of fraud on an innkeeper and an order denying his postconviction

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

motion. Hoeft raises several issues with his trial, but all of his arguments are largely undeveloped and lacking merit. Accordingly, we affirm.

## BACKGROUND

¶2 Hoeft was a guest at the Timber Inn Motel from December 9 to 15, 2017. On December 15, when Hoeft had not yet paid for his stay, the motel manager, Rachel Livingston, asked him to pay the bill. Hoeft stated that he needed to go to the post office to obtain a check in order to pay the bill, and he then left the motel. The next day, Hoeft had still not paid the bill. Livingston checked Hoeft's room and found that Hoeft had removed all of his belongings. Livingston called the police and filed a report with them. Hoeft was subsequently charged with fraud on an innkeeper in violation of WIS. STAT. § 943.21(1m)(a) and (3)(am)1.

¶3 At Hoeft's January 22, 2019 initial appearance, Hoeft pled not guilty, and the circuit court provided Hoeft with notice of his right to an attorney. At a motion hearing on March 29, 2019, Hoeft informed the court that he was representing himself but that he "might talk to an attorney about the … case" at a later date. The court then asked Hoeft questions to ascertain his competency to proceed pro se, including whether Hoeft understood that he had a constitutional right to be represented by an attorney, that he had the right to hire his own attorney, and that he might be entitled to a public defender. Hoeft stated that he understood these rights and again confirmed that he wished to represent himself. The court found Hoeft competent to waive his right to counsel and found that he had waived this right freely, voluntarily and intelligently.[2] The court also noted that its findings did not prevent Hoeft from retaining counsel at a later date. At a status conference on

---

[2] Hoeft does not appear to argue that the circuit court erred by originally allowing him to waive his right to counsel. Accordingly, we do not address this issue.

April 11, the court once more asked Hoeft if he wished to represent himself, and Hoeft again answered in the affirmative.

¶4      Hoeft's trial was originally scheduled to take place in May 2019, but it was rescheduled due to Hoeft's claim that he was suffering from medical issues. The circuit court ordered that Hoeft provide the court with his medical records and a synopsis of his condition by October 5, 2019.  Ultimately, Hoeft never provided the court with either the requested medical records or a synopsis.

¶5      At a hearing on May 15, 2019, the circuit court again asked Hoeft if he intended to be represented by an attorney, and Hoeft again stated that he intended to represent himself.  The court then warned:

> [I]f we get to a time a week before trial and you say I don't have an attorney, I don't have time to get an attorney, the [c]ourt is simply not going to entertain that.  If you choose to have an attorney, you always have the right to bring one with you but it is going to be your obligation to take care of that and the [c]ourt is not going to entertain adjournments to accommodate an attorney request.  Do you understand that?

Hoeft stated that he understood.

¶6      At a hearing on June 18, 2019, the circuit court again noted that Hoeft intended to represent himself at trial, and the court stated that it was "going to hold" Hoeft to that decision.  Hoeft "nodd[ed] in the affirmative."  The court held a status conference on July 22 during which Hoeft did not request an attorney.

¶7      At the final pretrial hearing on September 19, 2019, Hoeft stated, "I'm probably going to get an attorney after this hearing."  The circuit court again explained that it would not adjourn the trial, which was scheduled for October 9, and Hoeft affirmed that he understood this decision.  Hoeft then stated that he would

contact the public defender's office after that hearing. The court reiterated that it was Hoeft's responsibility to contact the public defender's office and that the court was not going to adjourn the trial because Hoeft had the ability to contact the public defender's office since the beginning of the case.

¶8      On October 9, 2019, before the jury was present, the State moved to have Hoeft found in contempt due to his failure to provide the circuit court with documentation of the medical issues that had caused the trial to be delayed. *See supra* ¶4. The court stated that it was "not going to address a contempt motion here 20 minutes before trial is supposed to start."

¶9      The circuit court then asked Hoeft if he had any issues that he would like to raise outside the presence of the jury. Hoeft complained that he had received forty-three pages of documents, including an amended witness list,[3] the day before trial and that he was not given a reasonable amount of time before trial to review those documents—in violation of the State's discovery obligations provided in WIS. STAT. § 971.23(1). The State replied that it sent Hoeft the documents as soon as it had them and that it did not intend to use any of the information in those forty-three pages for its case-in-chief. The court credited the State's representations regarding this issue and stated that it would not adjourn the trial.

¶10      Hoeft then stated that he had spoken to an attorney but was unable to retain counsel for his trial. The circuit court stated that Hoeft had the opportunity to obtain a public defender or to hire his own attorney and that Hoeft had previously "clearly indicated" that he wanted to represent himself. Further, the court noted that

---

[3] At some point between the September 19, 2019 hearing and the October 9, 2019 trial, the State filed an amended witness list. Hoeft does not raise any arguments on appeal regarding this amended list. Thus, we do not address the matter further.

Hoeft did not provide any specific information verifying his efforts to obtain an attorney. On these bases, the court again declined to adjourn the trial.

¶11 The jury was then sworn in, and the trial began. During its opening statement, the State erroneously stated that Hoeft was taken into custody by Lieutenant James Cummings of the City of Phillips Police Department five days after the police began their investigation.[4] During its closing argument, the State commented that the Timber Inn's manager, Livingston, was "uncontradicted" when she testified and that "[n]obody else could contradict [Livingston's] testimony." The jury ultimately found Hoeft guilty of fraud on an innkeeper.

¶12 In an eight-page, pro se motion for postconviction relief, Hoeft raised nineteen issues, many of which he raises again in this appeal. The circuit court held a hearing on Hoeft's postconviction motion, addressed each of the issues that Hoeft raised, and denied any relief.

## DISCUSSION

### I. Hoeft's Waiver of His Right to Counsel

¶13 Hoeft first appears to argue that the circuit court erred by refusing to honor his attempt to withdraw his waiver of his right to counsel.[5] Specifically, Hoeft contends that "[i]t would be obnoxious to think that the right to counsel clauses of

---

[4] Lieutenant Cummings did not take Hoeft into custody. Rather, Cummings "contacted the Price County Jail and had them process [Hoeft]."

[5] The arguments raised by Hoeft are, at best, undeveloped and difficult to follow. To the extent we do not address issues or arguments that Hoeft intended to raise, we conclude that such issues or arguments are insufficiently developed, are conclusory, or are too difficult to decipher. Accordingly, we reject them. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

5

the 5th[] and 6th Amendments were one [and] the same. But they actually are."[6] Hoeft claims that he notified the court of his desire to withdraw his waiver of his right to counsel three weeks before the trial, and he—presumably rhetorically—asks "[w]hen is it too [l]ate for a [p]ro [s]e person[] to ask for an [a]ttorney[?]"

¶14 We review the denial of a request to withdraw from self-representation for an erroneous exercise of discretion. *State v. Rhodes*, 2011 WI App 145, ¶27, 337 Wis. 2d 594, 807 N.W.2d 1. In considering whether the circuit court erroneously exercised its discretion, "we examine the record to determine if the [circuit] court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach." *Id.*, ¶28 (citation omitted). Here, we conclude that the court did not erroneously exercise its discretion when it denied Hoeft's request to withdraw from self-representation.

¶15 "[O]nce waived, the Sixth Amendment right to counsel is no longer absolute." *Id.*, ¶30 (citation omitted). In addressing a request to withdraw a waiver of the right to counsel, a circuit court may consider various factors, such as the court's "practical concerns of managing its docket[,] … the impact that a request may have on its general responsibilities for the prudent administration of justice," and the timeliness of the request. *Id.*, ¶31 (citation omitted). "Eleventh-hour

---

[6] We pause to note that the Fifth Amendment does not explicitly provide a right to counsel. *See* U.S. CONST. amend. V. Rather, the Supreme Court of the United States has held that the right to counsel at a custodial interrogation is "indispensable to the protection of the Fifth Amendment privilege [against self-incrimination]." *State v. Long*, 190 Wis. 2d 386, 393-94, 526 N.W.2d 826 (Ct. App. 1994) (alteration in original) (quoting *Miranda v. Arizona*, 384 U.S. 436, 469 (1966)). Regardless, and contrary to Hoeft's assertion, the *Miranda* right to counsel and the Sixth Amendment right to counsel are not "one [and] the same." *See McNeil v. Wisconsin*, 501 U.S. 171, 177-78 (1991).

requests are generally frowned upon as a mere tactic to delay the trial." *Id.* (citation omitted).

¶16    In this case, the circuit court based its decision to deny Hoeft's request to withdraw his waiver of the right to an attorney on the practical concerns it had regarding its docket.  During the March hearing, the court conducted a thorough colloquy with Hoeft, listed the ways in which an attorney might benefit Hoeft, found Hoeft competent to waive counsel, found that Hoeft freely, voluntarily and intelligently did so, and it advised Hoeft that he could still hire an attorney.  At the April hearing, the court again conducted a colloquy regarding Hoeft's desire to represent himself.  After the trial was rescheduled due to Hoeft's purported medical issues, the court once again asked Hoeft if he wished to represent himself.  After Hoeft confirmed that he still desired to proceed pro se, the court expressly warned Hoeft that "if we get to a time a week before trial and you say I don't have an attorney, I don't have time to get an attorney, the [c]ourt is simply not going to entertain that."  Hoeft acknowledged that he understood the court's admonition.  At the June hearing, Hoeft again indicated that he wished to represent himself.

¶17    It was not until the September hearing, three weeks before the trial, that Hoeft first expressed that he was "probably" going to get an attorney.  The circuit court told Hoeft that he could get an attorney but that the court would not adjourn the trial, as it had already been delayed once and Hoeft had the ability to obtain an attorney since the beginning of his case.  Hoeft stated that he understood this admonition.  It was not until the day of the trial that Hoeft unequivocally stated that he wished to raise the issue of his inability to retain counsel.  The court denied Hoeft's request due to Hoeft's repeated statements that he wished to represent himself, the fact that the court had previously stated that it would not adjourn the trial, and the fact that Hoeft provided the court with no evidence of his efforts to

obtain an attorney. Given the foregoing, the court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach.

¶18 Hoeft focuses on the fact that the circuit court stated that, "[I]f we get to a time *a week before trial* and you say I don't have an attorney, I don't have time to get an attorney, the [c]ourt is simply not going to entertain that." (Emphasis added.) He notes that he first indicated his desire to obtain an attorney *three* weeks before the trial. As to the court's use of the phrase "a week before trial," Hoeft interprets this phrase too literally. At several hearings before the trial, the court confirmed that Hoeft wished to waive his right to counsel and stated that it would not adjourn the trial again. Further, Hoeft was free to obtain an attorney during the three-week period before trial. In those three weeks, Hoeft did not ask the court to adjourn the trial, nor did he suggest that he would have any issue retaining counsel. Accordingly, the court did not erroneously exercise its discretion when it denied Hoeft's request to withdraw his waiver of the right to counsel on the scheduled trial.

## II. Alleged Prosecutorial Misconduct

¶19 Hoeft next argues that the State violated his due process rights by moving, at the beginning of the trial, for Hoeft to be found in contempt due to his failure to provide the circuit court with documentation regarding the medical issues that previously caused the trial to be delayed. Specifically, Hoeft notes that the State made this motion "20 minutes before the start of the trial," and Hoeft asserts that

this action made "it so [he] couldn't represent himself to the best of his abilities."[7] (Formatting altered.)

¶20     We generally review a circuit court's decision to grant a new trial on the basis of prosecutorial misconduct for an erroneous exercise of discretion.[8] ***State v. Lettice***, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996).  "Reversing a criminal conviction on the basis of prosecutorial misconduct is a 'drastic step' that 'should be approached with caution.'"     ***Id.*** (citation omitted).   We review prosecutorial misconduct in light of the entire record of the case and in consideration of a number of factors, including:

> the defendant's interest in being tried on evidence validly before the jury; the public's interest in having the guilty punished; the public's interest in not burdening the administration of justice with undue financial or administrative costs; the public's interest that the judicial process shall both appear fair and be fair in fact; and the interest of the individuals involved—the witnesses and family of the victim—not to be subjected to undue trauma, embarrassment or inconvenience.

***Id.*** at 353 (citation omitted).

¶21     Hoeft relies heavily on ***Lettice***, arguing that the State's conduct in his case "is far more egregious than the ***Lettice*** case" because he was self-represented.

---

[7] Hoeft does not explain exactly why the prosecutor's actions constitute misconduct.  It seems, and we presume, that his contention is that by the prosecutor moving to have Hoeft held in contempt twenty minutes before the trial, Hoeft was wrongly being intimidated and thus prevented from being able to focus solely on the trial.  As noted above, Hoeft fails to fully develop this argument.

[8] We pause to note that Hoeft did not object to the prosecutor's motion for contempt at trial.  Hoeft first raised this issue in his motion for postconviction relief.  As such, Hoeft has arguably waived this argument, and the plain error doctrine applies.  *See **State v. Jorgensen***, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77.  However, neither Hoeft nor the State address the plain error doctrine in their briefs.  Regardless, Hoeft has not met his burden of establishing that the alleged error is "fundamental, obvious, and substantial."  *See **id.***, ¶23.

First, we note that Hoeft does not support with legal authority his assertion that prosecutorial misconduct is exacerbated when a defendant proceeds pro se. Regardless, Hoeft misunderstands *Lettice*. In *Lettice*, the victim was examined by a psychologist and, after the circuit court ruled that the psychologist's notes were not confidential treatment records, the defendant's attorney filed a motion incorporating a copy of the notes from the psychologist's report. *Id.* at 350. Disregarding the court's ruling, three days before trial, the State served the defendant's attorney with a criminal complaint charging the attorney with publicly disclosing a confidential medical record. *Id.* at 349. As a result of this charge, defense counsel devoted his time researching the law applicable to the charges against him, rather than the defendant, and he was unable to sleep for two days. *Id.* at 351. The defendant then went to trial represented by that attorney, and he was convicted on all charges. *Id.*

¶22 On appeal, this court took note of the circuit court's findings, specifically that, prior to the charge being filed against defense counsel, the State's attorney was heard stating that he needed an adjournment of the trial, after which he pulled the psychologist's report from the defendant's file and said "this is it." *Id.* at 354. The circuit court found that the State filed the charges "either to disqualify [the defendant's attorney] or to delay the jury trial" and that the State's "intentional misconduct had a profoundly negative impact on [the defense attorney's] ability to effectively represent Lettice." *Id.* Given these factual findings, we concluded that Lettice was deprived of his right to a fair trial. *Id.* at 355.

¶23 Here, addressing Hoeft's postconviction request for a new trial due to the alleged prosecutorial misconduct, the circuit court noted it

> did not proceed on the request and simply indicated it was not going to proceed on the request at that time. That entire

> discussion was just a very few seconds, and the [c]ourt can find here today that it would have had no effect on Mr. Hoeft being able to address issues. He never raised a concern on that day about there being any problems with the request and, of course, the request was of such short duration and not addressed by the court that it could not have caused any particular problem in Mr. Hoeft's focus.

Accordingly, the court denied Hoeft's request for a new trial.

¶24 Hoeft does not allege that the circuit court's findings are clearly erroneous, nor does he even address these findings. Regardless, as the State correctly notes, "*Lettice* is not analogous" to the facts of this case. Unlike *Lettice*, the State here did not file an unfounded charge with the goal of delaying the trial, nor did the court find that the misconduct had a "profoundly negative impact" on Hoeft's ability to present a defense. Rather, the court applied the proper legal standard and then used a demonstrated rational process to reach a reasonable conclusion. Thus, we conclude that the court did not erroneously exercise its discretion by denying Hoeft's request for a new trial.

## III. The State's Discovery Obligations

¶25 Hoeft next argues that the State violated its discovery obligations under WIS. STAT. § 971.23 when the State mailed him forty-three pages of documents that he received the day before trial.

¶26 "Whether a discovery violation has occurred poses a question of law that we review de novo." *State v. Prieto*, 2016 WI App 15, ¶10, 366 Wis. 2d 794, 876 N.W.2d 154 (2015). WISCONSIN STAT. § 971.23(1) provides, "Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant … and permit the defendant … to inspect and copy or photograph all of the [listed] materials and information, if it is within the possession, custody or

control of the state." There is no dispute as to whether the documents in question are covered by § 971.23(1). Rather, the dispute is whether the documents were sent "within a reasonable time before trial."

¶27 While the documents were sent to Hoeft shortly before trial, the State averred that it received the documents in question on October 2 and that it mailed the documents to Hoeft the next day. Further, the documents—aside from the amended witness list, which was filed on September 23—were not in the State's possession prior to October 2; rather, the State was waiting to receive the documents from the Inn. Furthermore, the documents totaled forty-three pages, which is not an unreasonable amount to review in preparation for a trial one day later.[9] *Cf. State v. Harris*, 2008 WI 15, ¶¶16-17, 36-40, 307 Wis. 2d 555, 745 N.W.2d 397 (concluding that the prosecutor acted unreasonably by disclosing a police report to defense counsel ten minutes before trial when the prosecutor had the file for months).

¶28 Without any evidence supporting his claim, Hoeft asserts that the State intentionally delayed disclosing the documents so that Hoeft would not have time to look through them and "build a defense." However, the circuit court found the State's averments to be credible. The circuit court is the ultimate arbiter of witness credibility, and when more than one reasonable inference can be drawn from the credible evidence, we must accept the inference drawn by the circuit court. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249-50, 274 N.W.2d 647 (1979). Hoeft does not address the court's finding of the State's credibility regarding its reasons for providing the documents when it did. Accordingly, we

---

[9] Regardless, the State stated that it would only use the documents to cross-examine Hoeft if he elected to testify. Given that Hoeft elected not to testify, these documents were not used.

conclude that the State did not violate its discovery obligations under WIS. STAT. § 971.23(1).

## IV. The State's Opening Statement

¶29 Hoeft next argues that the State "lied" during its opening statement and that this lie rendered the trial unfair by destroying the presumption of innocence. Specifically, Hoeft takes issue with the State's assertion that Hoeft was taken into custody by Lieutenant Cummings when, in actuality, Cummings merely "contacted the Price County Jail and had them process [Hoeft]."

¶30 Hoeft did not object to the State's opening statement at trial. Accordingly, we analyze this issue under the plain error doctrine.

> Under the doctrine of plain error, an appellate court may review error that was otherwise waived by a party's failure to object properly or preserve the error for review as a matter of right. [Our supreme court] has not articulated a bright-line rule for what constitutes plain error, acknowledging that there is no "hard and fast classification" relative to its application. Rather, the existence of plain error will turn on the facts of the particular case.

*State v. Mayo*, 2007 WI 78, ¶29, 301 Wis. 2d 642, 734 N.W.2d 115 (citation omitted). "The error, however, must be 'obvious and substantial.'" *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (citation omitted). "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." *Id.*, ¶23.

¶31 Hoeft fails to show that the State's error is fundamental, obvious or substantial, much less all three. Without any citations to case law, Hoeft merely states that "lying to the jury" violated his due process rights. We disagree. While

the State may have misstated forthcoming evidence in its opening argument, the issue of who exactly took Hoeft into custody following the police investigation is not fundamental, obvious or substantial. In addition, Hoeft used the State's misstatement to impeach Lieutenant Cummings during his testimony. The jury thus would have been aware that the State's statement was false. Further, the jury was instructed that opening statements are not evidence.

## V. The State's Closing Argument

¶32 Hoeft also argues that, during its closing argument, the State impermissibly commented on Hoeft's decision not to testify at trial. Specifically, Hoeft takes issue with the State's argument to the jury that "Livingston's testimony about what happened was uncontradicted. You heard nobody else testif[y]. Nobody else was there. Nobody else could contradict that testimony. You've heard no contradictory evidence at all about what she said." Hoeft did not object to these statements during the trial.

¶33 Whether the State violated Hoeft's Fifth Amendment right not to testify presents a question of law that we review de novo. *See State v. Hoyle*, 2023 WI 24, ¶15, 406 Wis. 2d 373, 987 N.W.2d 732. To avoid issues with a defendant's right not to testify in his or her own defense, "a prosecutor may not suggest to the jury that a defendant's choice not to testify indicates guilt." *State v. Jaimes*, 2006 WI App 93, ¶21, 292 Wis. 2d 656, 715 N.W.2d 669.

> [F]or a prosecutor's comment to constitute an improper reference to the defendant's failure to testify, three factors must be present: (1) the comment must constitute a reference to the defendant's failure to testify; (2) the comment must propose that the failure to testify demonstrates guilt; and (3) the comment must not be a fair response to a defense argument.

14

*Id.*; *see also Hoyle*, 406 Wis. 2d 373, ¶¶31, 33, 39 (expanding upon and analyzing these legal principles).

¶34 Hoeft fails to explain how the State's comment satisfies the above three factors. Indeed, he fails to even acknowledge any of these factors. Nevertheless, upon our independent review of the record, we conclude that the State's comment fails to satisfy the first and second *Jaimes'* factors. The comment that Livingston's testimony was uncontroverted does not implicate Hoeft's decision not to testify or imply Hoeft's guilt due to his decision not to testify, as Hoeft could have presented evidence to contradict Livingston's testimony other than his own testimony. Hoeft could have presented his own witnesses or documents evidencing that he made a payment on his Inn bill. He could have also cross-examined Livingston regarding his alleged nonpayment, including any documents that she referenced.

¶35 Furthermore, after closing arguments, the circuit court instructed the jury that "[a] defendant in a criminal case has the absolute constitutional right not to testify. The defendant's decision not to testify must not be considered by you in any way and must not influence your verdict in any manner." We presume that the jury follows all instructions given, and Hoeft has not addressed this jury instruction. *See State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992).

## VI. The Sufficiency of the Evidence

¶36 Finally, Hoeft challenges the sufficiency of the evidence supporting his conviction. Hoeft argues that the only witness with firsthand knowledge of the events leading to Hoeft's arrest was Livingston, and Livingston did not provide any "evidence" that he stayed at the motel. Hoeft further asserts that Livingston was lying.

¶37 We will "not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶38 Hoeft misunderstands the "evidence" against him, insomuch as testimony *is* evidence. And Livingston testified that Hoeft had stayed at the Timber Inn Motel previously and had paid for that stay, but she explained that Hoeft failed to pay for his subsequent stay, and she identified Hoeft in the courtroom.

¶39 Contrary to Hoeft's assertion, this testimony, if credited by the jury, was sufficient to prove that Hoeft violated WIS. STAT. § 943.21(1m)(a) and (3)(am)1. and supports the jury's guilty verdict. While Hoeft may claim that Livingston was lying, it was within the province of the jury to determine whose evidence and testimony were credible. *See Poellinger*, 153 Wis. 2d at 503. We will not disturb the jury's decision on Livingston's credibility. Thus, we reject Hoeft's assertion that there was insufficient evidence to convict him of fraud on an innkeeper.[10]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[10] Hoeft also asserts that the cumulative effect of the multiple issues he raises requires the reversal of his conviction. Because we conclude that Hoeft has failed to prove any of his arguments, we reject this argument as well.